IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Criminal Action No. |
| | ) | 06-00103-01-CR-W-ODS |
| CHRISTOPHER S. DETTLAFF, | ) | |
| | ) | |
| Defendant. | ) | |

**REPORT AND RECOMMENDATION**
**TO ACCEPT DEFENDANT'S GUILTY PLEA**

On August 17, 2006, I held a change-of-plea hearing after this case was referred to me by United States District Judge Ortrie Smith. I find that Defendant's plea was voluntary and therefore recommend that it be accepted.

## *I. BACKGROUND*

On March 15, 2006, an indictment was returned, charging Defendant with, *inter alia*, conspiracy to distribute methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A) and 846. Defendant was present, represented by appointed counsel Ron Hall. The government was represented by Assistant United States Attorney Kate Mahoney. The proceedings were recorded and a transcript of the hearing was filed on August 18, 2006.

## *II. AUTHORITY OF THE COURT*

The authority of federal magistrate judges to conduct proceedings is created and defined by the Magistrates Act, 28 U.S.C. § 636. Besides certain enumerated duties, the Act provides that a "magistrate may be assigned such additional duties as are not inconsistent with the Constitution and the laws of the United States." 28 U.S.C. § 636(b)(3).

The Eighth Circuit, following the reasoning of several other circuits, has held that magistrate judges may preside over allocutions and pleas in felony cases, so long as certain procedural safeguards are met. United States v. Torres, 258 F.3d 791, 795-96 (8th Cir. 2001); see also United States v. Dees, 125 F.3d 261 (5th Cir. 1997), United States v. Williams, 23 F.3d 629 (2d Cir. 1994). The reasoning applied by the appellate courts relies upon previous opinions by the United States Supreme Court that conducting jury *voir dire* falls within a magistrate judge's "additional duties" when the defendant has consented. See Torres, 258 F.3d at 795 (citing Peretz v. United States, 501 U.S. 923 (1991); Gomez v. United States, 490 U.S. 858 (1989)).

In Peretz, the Supreme Court held that when a defendant consents to a magistrate judge's involvement in *voir dire*, he waives any objection based on his right to have an Article III judge hear his felony case. 501 U.S. at 936. Moreover, the availability of *de novo* review by a district judge preserves the structural guarantees of Article III. Torres, 258 F.3d at 795. Applying the Peretz holding and adopting the reasoning of Williams, the Eighth Circuit held that the acceptance of guilty pleas bears adequate relationship to duties already assigned by the Magistrates Act in that "[a]n allocution is an ordinary garden variety type of ministerial function that magistrate judges commonly perform on a regular basis." Id. (quoting Williams, 23 F.3d at 633). Plea allocutions are substantially similar to evidentiary proceedings explicitly assigned by the Act. Id. at 796 (citing Dees, 125 F.3d at 265). Even if taking a guilty plea were considered to be of greater importance than those duties already assigned, the consent of the defendant saves the delegation. Id. "Consent is the key." Id. (quoting Williams, 23 F.3d at 633).

The Torres court also addressed the implications of such a delegation for Article III's case and controversy clause. Id. Because plea proceedings are submitted to the district court for

2

approval, the court retains ultimate control over the proceedings and is not bound to accept a plea taken by a magistrate judge. Id. Moreover, the district court's *de novo* review of the plea proceedings contributes to the ministerial nature of the magistrate judge's role. Id.

Based on the above, I find that, with the consent of the defendant, the District Court may properly refer a felony case to a Magistrate Judge for conducting a change-of-plea hearing and issuing a report and recommendation on whether the plea should be accepted.

### III. FINDINGS OF FACT

1. The parties consented to the delegation of the change of plea to the magistrate judge (Tr. at 2-3).

2. On March 15, 2006, an indictment was returned charging Defendant Dettlaff with, *inter alia*, one count of conspiracy to distribute 500 grams or more of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A) and 846 (Tr. at 4). The court read the charge against Defendant and Defendant indicated that he understood the nature of the charge (Tr. at 4).

3. The statutory penalty for conspiracy to distribute methamphetamine is not less than ten years but not more than life imprisonment, a fine of up to $4 million, a supervised release term of not less than 5 years, a $100 mandatory special assessment fee, and the potential for restitution (Tr. at 4-5).

4. Defendant was advised of the following:

   a. That he has a right to a trial by jury of at least 12 individuals and that their verdict must be unanimous (Tr. at 5-6);

   b. That he has the right to assistance of counsel throughout the trial (Tr. at 6);

3

      c.      That Defendant is presumed innocent, and the government has the burden of coming forward to prove Defendant's guilt beyond a reasonable doubt (Tr. at 7);

      d.      That Defendant's attorney would have the opportunity to cross-examine the government's witnesses (Tr. at 7);

      e.      That Defendant has the right to testify but does not have to, and that the jury could not make an adverse inference from the fact that Defendant may not testify at trial (Tr. at 8-9);

      f.      That Defendant has the right to subpoena witnesses to testify on his behalf (Tr. at 8); and

      g.      That Defendant has the right to appeal any conviction to the Eighth Circuit Court of Appeals (Tr. at 9-10).

5.      Defendant was informed and understood that by pleading guilty, he was giving up all of the rights described above (Tr. at 10-11).

6.      Defendant was informed that during the change-of-plea proceeding, he would be placed under oath and questioned by counsel and the judge (Tr. at 11). Defendant was further informed that he must answer questions truthfully while under oath (Tr. at 11-12). Defendant stated that he understood (Tr. at 11-12).

7.      Government counsel stated that this has been an open file case (Tr. at 12). If this case were to be tried, the government's evidence would be that on February 14, 2005, Defendant was arrested after a car chase in Raytown, Missouri (Tr. at 12). During a search incident to arrest, officers recovered 6.9 grams methamphetamine and $689.00 in United States currency (Tr. at 12).

On August 2, 2005, there were complaints of drug activity at 1807 Southwest 2nd Street in Lee's Summit, Jackson County, Missouri (Tr. at 12-13). A search warrant was obtained and served on that date (Tr. at 13). Defendant was arrested at the residence, in which he and co-defendant Brandi Lasure lived (Tr. at 13). Police recovered 40 grams of methamphetamine, two handguns in the basement, and a drug ledger that referred to "Shane" (Tr. at 13). The evidence would show that Defendant's middle name is "Shane" and that is what he went by (Tr. at 13). Next to the name "Shane" on the ledger were various amounts of money (Tr. at 13). After Defendant was Mirandized, he admitted to possessing firearms while being a convicted felon (Tr. at 13). He did not claim that the drugs found at the residence were hers, but did admit to selling methamphetamine out of that address with co-defendant Lasure, claiming they had different customers (Tr. at 13).

In addition, there would be several witnesses who would testify they both bought methamphetamine and saw Defendant selling methamphetamine (Tr. at 13). One witness in particular said he had bought at least seventy-five ounces from Defendant, which would equal about two kilograms from October of 2004 through October of 2005 (Tr. at 13).

Defendant was arrested again on February 27, 2006 (Tr. at 13). He admitted to law enforcement officers that he had sold over three pounds of methamphetamine or approximately 1.5 kilograms from July to August of 2005 (Tr. at 13). Defendant named at least five suppliers and five customers (Tr. at 13-14). The methamphetamine that was recovered on the two specific arrests and that which was subsequently recovered from other people has been tested and was found positive for methamphetamine (Tr. at 14).

8. Defense counsel stated that he had reviewed the government's file and confirmed from his own independent investigation that it was wise for his client to plead guilty (Tr. at 14).

5

9. Defendant admitted that between January 1, 2004, and February 27, 2006, he knew some or all of the other individuals named in Count One of the Indictment (Tr. at 15). During this same time period, Defendant and at least one of these individuals had an agreement to distribute methamphetamine (Tr. at 15). Defendant specifically had an agreement with co-defendant Lasure (Tr. at 16). Both together and separately, Defendant and co-defendant Lasure distributed methamphetamine (Tr. at 16). More than 500 grams of methamphetamine were distributed pursuant to this agreement (Tr. at 15-16). The distribution occurred in and around Jackson County, Missouri, in the Western District of Missouri (Tr. at 16). At the time Defendant committed these acts, he knew doing so was against the law (Tr. at 17).

10. Defendant stated that he had reviewed the plea agreement with his attorney and understood the terms of the agreement (Tr. at 17). I then reviewed the terms of the plea agreement with Defendant (Tr. at 17-21). According to the agreement, the government agreed to dismiss Counts Seven and Eight at final sentencing (Tr. at 19). If Defendant provides substantial assistance when cooperating, the government has the discretion to file a motion for downward departure (Tr. at 19-20). Defendant understood he had not yet earned cooperation (Tr. at 24).

11. No one has made any threats or any other promises in order to get Defendant to plead guilty (Tr. at 17, 22).

12. Defendant is satisfied with the representation he has received from Mr. Hall (Tr. at 22). There is nothing he has done that Defendant did not want him to do, and there is nothing Defendant wanted him to do that he has not done (Tr. at 22).

13. Defendant is 30 years old and has an eleventh grade education (Tr. at 22-23). Defendant does not have any physical or mental health concerns that would prevent him from

entering an intelligent and voluntary plea of guilty to this charge (Tr. at 23). Defendant was not under the influence of drugs or anything else that would cloud his ability to intelligently waive his right to a jury trial (Tr. at 23).

14. Defendant tendered a plea of guilty to the crime charged in Count One of the Indictment (Tr. at 25).

15. The parties waived the ten-day objection period to the Report and Recommendation (Tr. at 25).

## V. ELEMENTS OF THE CHARGED OFFENSE

The elements necessary to sustain a conviction for conspiracy to distribute methamphetamine include: (1) an agreement to distribute methamphetamine; (2) the defendant knew of the agreement; and (3) the defendant intentionally joined the conspiracy. United States v. Savatdy, 452 F.3d 974, 977 (8th Cir. 2006).

## V. CONCLUSION

Based on the above, I make the following conclusions:

1. The district court may lawfully refer this case to a magistrate judge for issuance of a report and recommendation on whether Defendant's guilty plea should be accepted.

2. Defendant has consented to having his plea taken by a magistrate judge.

3. Defendant knowingly and voluntarily pleaded guilty to conduct establishing every element of the crime charged in Count One of this indictment.

Therefore, it is

RECOMMENDED that the court, after making an independent review of the record and the applicable law, enter an order accepting Defendant's guilty plea and adjudging Defendant guilty of

7

the offenses charged.

                                                                        /s/ *Robert E. Larsen*
                                                                     ROBERT E. LARSEN
                                                                     United States Magistrate Judge

Kansas City, Missouri
August 18, 2006